**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

J. RONNIE JACKSON,
Plaintiff-Appellee,

v.

No. 96-1273

CHARLES H. LONG, Individually, and
in his official capacity as Sheriff of
Buncombe County,
Defendant-Appellant.

TERESA A. PENLAND,
Plaintiff-Appellee,

v.

No. 96-1274

CHARLES H. LONG, Individually, and
in his official capacity as Sheriff of
Buncombe County,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-94-137-T, CA-94-119-T)

Argued: September 25, 1996

Decided: December 17, 1996

Before RUSSELL, NIEMEYER, and MOTZ, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Russell concurred. Judge Motz concurred
in the judgment only.

**COUNSEL**

**ARGUED:** William Alfred Blancato, BENNETT & BLANCATO, L.L.P., Winston-Salem, North Carolina, for Appellant. Sean Patrick Devereux, WHALEN, HAY, PITTS, HUGENSCHMIDT, MASTER & DEVEREUX, P.A., Asheville, North Carolina; C. Frank Goldsmith, Jr., GOLDSMITH, GOLDSMITH & DEWS, Marion, North Carolina, for Appellees.

_____

**OPINION**

NIEMEYER, Circuit Judge:

When Buncombe County (North Carolina) Sheriff Charles H. Long received a complaint from a female inmate in the Buncombe County Detention Center that she had been raped by a jailer, Sheriff Long conducted a brief investigation and then referred the matter to the North Carolina Bureau of Investigation for a criminal investigation. While the criminal investigation was continuing, Sheriff Long dismissed both the accused jailer and the matron on duty on the floor where the incident allegedly occurred. He also issued a press release announcing his action, and in further public comments, he stated that if the dismissed jailers were cleared, they could reapply for their jobs. Criminal charges filed against the jailer accused of the rape were ultimately dropped, and the matron on duty was never criminally charged. Both, however, appeared to have been violating detention center policy at the time of the alleged incident.

Both dismissed employees filed actions against Sheriff Long under 42 U.S.C. § 1983, alleging that they were deprived of their property interests in their employment and their liberty interests in their reputations without due process of law in violation of the Fourteenth Amendment. They also alleged state law claims. Sheriff Long filed a motion for summary judgment in which he asserted, among other things, qualified immunity and immunity under the Eleventh Amendment. The district court denied the motion and this interlocutory appeal followed.

2

Because we find that Sheriff Long's conduct was shielded by qualified immunity and that the dismissed employees failed to assert a sufficient claim against him in his official capacity, we reverse and remand these actions to the district court with instructions to dismiss the § 1983 claims filed against Sheriff Long.

I

When inmate Sharon Brock returned to the Buncombe County Detention Center from work release on the evening of July 16, 1993, she complained to the matron on duty that on the previous evening she had been raped in her cell by Ronnie Jackson, the supervising jailer on duty at the time of the alleged assault. Inmate Brock showed the matron bruises on her pelvic region and scrapes on her chest and labia which she claimed were produced during the attack. The matron contacted her supervisor, and the Sheriff's Department immediately began an investigation. When Sheriff Long learned of the allegations the next morning, he suspended Jackson and another jailer, Teresa Penland, with pay, pending the results of the investigation. Penland was the matron on duty on the floor at the time of the alleged assault.

Jackson denied any sexual contact with inmate Brock, and Penland denied any knowledge of an assault, but both cooperated with the Sheriff's investigation, giving accounts of their interactions with Brock on the day in question. While some details of their stories differed, both stated that Brock was upset and periodically tearful on July 15, spending varying periods out of her cell on the telephone trying to arrange transportation for her work release the following day. Both also acknowledged that Jackson had brought inmate Brock some food and that another male jailer, Kelce Lytle, had accompanied Jackson to Brock's floor on that same day. Jackson and Lytle both reported that Penland had escorted Lytle to see some inmates, leaving Jackson unaccompanied on the women's floor for some period of time, in violation of detention center policy.

Several days after commencement of the departmental investigation, Sheriff Long requested that the North Carolina State Bureau of Investigation ("SBI") undertake an independent investigation into potential criminal violations. When the SBI began its investigation, the Sheriff's Department ceased its own. Although no one in the Sher-

3

iff's Department participated in the SBI investigation, the SBI briefed Sheriff Long on its progress. After Sheriff Long learned that Jackson had failed a polygraph test when asked if he had ever had sexual contact with Brock and that Brock's own polygraph had been negative, but inconclusive, he terminated the employment of both Jackson and Penland on August 5, 1993. He refused to give any reason for the terminations, stating that these jailers served at his pleasure and it was his pleasure to terminate them.

Upon dismissing Jackson and Penland, Sheriff Long issued a press release as follows:

> As a result of an internal investigation by the Buncombe County Sheriff's Department, two detention officers have been dismissed from employment at the Buncombe County Detention Center.
>
> The investigation was ordered by Sheriff Charles H. Long after allegations were made of an alleged assault on an inmate in the custody of the Buncombe County Jail.
>
> Sheriff Long has requested that the State Bureau of Investigation conduct an independent investigation into any possibl[e] criminal violation arising from this incident.
>
> Further information regarding this matter will not be released at this time, pending investigation.

Long also made some public statements about the matter during the next several days. He told The Asheville Citizen-Times that the jailers were fired for violation of an unspecified departmental policy. The article also attributed to Long the following statements:

> I did what was best for the department . . . . Any conduct over there (jail) will not be tolerated if it will put me or the county in peril.

Television station WLOS attributed the following to Sheriff Long:

4

> Any time we have an assault, or anything that might be of an unlawful nature it's a matter of concern . . . we have a high liability in the detention center and we have a lot of worry . . . we don't like for these things to happen.

WLOS reported Sheriff Long to have said that the jailers could reapply for their jobs if they were cleared of any wrongdoing.

News reports contained information from other sources, including the plaintiffs themselves, revealing their names and the fact that the nature of the assault was sexual. Jackson himself apparently informed reporters that he had failed a polygraph test.

Almost two weeks after being fired, Penland sent a letter to Sheriff Long requesting a "civilian board hearing." In her letter, postmarked August 18, 1993, Penland alleged that her August 5 termination was motivated by personal and not "occupational" reasons. Counsel for Sheriff Long informed Penland that she was not entitled to any appeal because she had missed the five-day deadline for disciplinary appeals prescribed by departmental Policies and Procedures. Moreover, counsel advised Penland that there was no provision for appeal of a Sheriff's decision to terminate employment. He informed Penland, nevertheless, that her dismissal would be automatically reviewed by the "Sheriff's Review Board" at its next regular meeting. Jackson never requested a hearing of any kind because, as he explained, Penland had advised him of the letter she had received in response to her request for a hearing.

In May 1994, Jackson was indicted for second degree rape and sexual activity by a custodian. In the course of pursuing his criminal defense, Jackson obtained numerous psychiatric records of inmate Brock, revealing a history of mental illness. The records disclosed that Brock had previously made unsubstantiated accusations of sexual abuse against a variety of relatives, guardians, and acquaintances, although her father did plead no contest to charges of sexual abuse. After revelation of these documents, state prosecutors dismissed all criminal charges against Jackson.

Jackson and Penland each filed actions against Sheriff Long, individually and in his official capacity, under 42 U.S.C. § 1983 and

5

under state law. They alleged that in firing them, Sheriff Long had deprived them of their property interest in their employment and their liberty interest in their reputations without due process of law in violation of the Fourteenth Amendment and of a parallel state constitutional provision. They also alleged under state law that Sheriff Long had defamed them in making his comments to the press. The complaints did not separately allege constitutional tort claims against Sheriff Long in his official capacity and did not allege that any regulation, policy, or practice of the Sheriff's Office formed a basis for the conduct they alleged was illegal.

Sheriff Long filed a motion for summary judgment, contending (1) that the plaintiffs did not have a property interest in their employment, (2) that the plaintiffs were not deprived of any liberty interest since all public statements were true and neither plaintiff had ever requested a name-clearing hearing, (3) that the plaintiffs failed as a matter of law to state a claim against him in his official capacity, (4) that in his official capacity he was entitled to Eleventh Amendment immunity, and (5) that in his individual capacity he was entitled to qualified immunity.[1]

In denying Long's motion in all respects, the district court denied Long's claims of immunity. It concluded that 1973 North Carolina Session Law 297 granted Jackson and Penland a property interest in continued employment; that Sheriff Long's statements to the press "clearly suggest[ ] that the Plaintiffs were involved in an assault on an inmate" and therefore they "were falsely stigmatizing"; that the court had "insufficient information" to determine the Eleventh Amendment immunity issue or whether the complaint alleged any custom or policy sufficient to state a claim against Long in his official capacity; and that the constitutional rights that Long allegedly violated were clearly established, but that factual issues existed "as to the Defendant's actual conduct, and as to the reasonableness of this conduct." The court's opinion did not identify those factual issues.

_____

[1] Sheriff Long also moved for summary judgment on the state law claims which are not before us.

6

II

As a threshold matter, we must address Jackson's and Penland's contention that we are without jurisdiction to decide these interlocutory appeals. Although interlocutory rulings on qualified immunity are ordinarily immediately appealable as collateral orders, see Mitchell v. Forsyth, 472 U.S. 511, 525 (1985), Jackson and Penland argue that in this case the district court concluded that disputed issues of fact preclude determination of the qualified immunity defense and that therefore under Johnson v. Jones, 115 S. Ct. 2151 (1995), these appeals should be dismissed.

In Johnson, the court held that the district court's determination of whether a fact was disputed for purposes of summary judgment was not appealable. The district court had found that the plaintiff's excessive force claim was clearly established and that the plaintiff's facts, if proven, would support a finding that the defendants violated the plaintiff's constitutional rights. It concluded, however, that those facts were in dispute. On appeal the defendants argued that the record contained "not a scintilla of evidence" consistent with the plaintiff's claims. The Seventh Circuit, noting that the issue on appeal was whether the district court was correct in finding a factual dispute, declined to review the district court's order denying summary judgment. Affirming the Seventh Circuit, the Supreme Court observed that appellate courts, which are not as well equipped as district courts to review the issue of whether factual disputes exist, should not review interlocutory district court orders making that finding. The Court accordingly held that orders determining "whether or not the pretrial record sets forth a `genuine' issue of fact for trial" are not appealable. Johnson, 115 S. Ct. at 2159.

The Johnson principle is limited to the circumstance where the dispute on appeal is whether a factual dispute was created. If, however, resolution of the factual dispute is immaterial to whether immunity should be afforded, the underlying legal question about whether immunity is to be afforded remains and may be appealed under Mitchell as a collateral order. See 472 U.S. at 530; see also Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996) ("Denial of summary judgment often includes a determination that there are controverted issues of material fact . . . and Johnson surely does not mean that every such

7

denial of summary judgment is nonappealable"). As the Court in Behrens explained, orders denying summary judgment are still appealable under Mitchell "when they resolve a dispute concerning an `abstract issu[e] of law' relating to qualified immunity . . . typically, the issue whether the federal right allegedly infringed was `clearly established.'" Id. (citations omitted; alterations in original).

In the case before us, the district court was troubled by whether Jackson and Penland actually participated in the conduct for which the announced investigation placed them under suspicion. It concluded that factual questions existed about whether the assault occurred and whether, when charges were dropped, the plaintiffs were stigmatized. While these may be disputed factual questions, they are not material to the abstract question of Sheriff Long's immunity, which depends on whether Sheriff Long violated clearly established constitutional rights and whether he reasonably should have so known. The facts which are relevant for determining whether Sheriff Long has immunity must be taken from the viewpoint of Sheriff Long at the time he terminated the jailers and not of an independent fact-finder looking later in hindsight at whether the assault actually occurred or whether Sheriff Long proved to be right in his decisions. No factual question was raised about whether Sheriff Long reasonably believed that sufficient facts existed to initiate an investigation or that he could, as a matter of state law, dismiss Jackson and Penland as at-will employees.

Since the facts relevant to the nature of the complaint presented to Sheriff Long and his response are not in dispute, we are left with the legal questions of whether Sheriff Long's response violated clearly established constitutional rights and, if so, whether Sheriff Long reasonably should have known that it did. This posture of undisputed facts about Sheriff Long's belief is precisely that which enables us to resolve immunity, as we should, before trial "at the earliest possible stage of a litigation." See Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987). This is important because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Behrens, 116 S. Ct. at 838 (quoting Mitchell, 472 U.S. at 526).

While Sheriff Long's challenge to the district court's interlocutory ruling denying him Eleventh Amendment immunity on the alleged

8

claim that he is liable in his official capacity would also be appealable at this time, see Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993), we do not reach the Eleventh Amendment immunity because, as we explain below, no claims are alleged against Sheriff Long in his official capacity.

III

On his appeal, Sheriff Long contends that he is entitled to qualified immunity for the § 1983 claims that seek damages from him in his individual capacity. This contention raises the legal questions of whether Sheriff Long violated any clearly established constitutional rights of plaintiffs in responding to the inmate's complaint against them and, if the law clearly established those rights, whether a reasonable official in Sheriff Long's position would have known of those rights. Because these are questions of law, we review them de novo. See Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992).

Defining qualified immunity for public officials, the Supreme Court has stated that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To determine whether a federal right was clearly established at the time of the defendants' alleged conduct, we focus `not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.'" Zepp v. Rehrmann, 79 F.3d 381, 385 (4th Cir. 1996) (quoting Pritchett, 973 F.2d at 312).

Accordingly, to determine whether Sheriff Long should have known that he was violating Jackson and Penland's constitutional rights, we consider first whether those rights clearly existed and, if so, then whether a reasonable officer in Long's position would have appreciated he was violating those rights. Pritchett, 973 F.2d at 312. Obviously, if no constitutional right existed, the inquiry ends, as Sheriff Long could not have known of a right that did not exist.

A

In this case, the dismissed jailers contend that in firing them without a hearing, Sheriff Long deprived them of a constitutionally pro-

9

tected property right in their public employment as jailers. While Sheriff Long does not contend that he in fact provided the jailers a hearing, he claims that the jailers were at-will employees who served at his pleasure and therefore cannot claim a property interest in their employment. Resolution of that dispute is determined by reference to state law. See Bishop v. Wood, 426 U.S. 341, 344-45 (1976).

Under North Carolina law, employment is generally presumed to be "at-will" in the absence of a contract establishing a definite employment duration or a statute or ordinance restricting an employee's discharge. See Pittman v. Wilson County, 839 F.2d 225, 227 (4th Cir. 1988). Rather than restricting the discharge of sheriff's employees, including jailers, North Carolina law explicitly grants sheriffs exclusive power over employment decisions. See N.C. Gen. Stat. §§ 153A-103 ("Each sheriff . . . elected by the people has the exclusive right to hire, discharge, and supervise the employees in his office"). And North Carolina courts have interpreted this statute to deny sheriffs' employees any property right in their employment. See Peele v. Provident Mut. Life Ins. Co., 368 S.E.2d 892, 894-95 (N.C. App.), appeal dismissed, 323 N.C. 366, 373 S.E.2d 547 (1988). Accord, Hughes v. Bedsole, 913 F. Supp. 420, 426 (E.D.N.C. 1994), aff'd, 48 F.3d 1376 (4th Cir.), cert. denied , 116 S. Ct. 190 (1995).

Jackson and Penland, however, base their property right claim on two specific sources of law: (1) 1973 North Carolina Session Law number 297, applicable solely to the Buncombe County Sheriff's Department, and (2) Policy 15 of the Buncombe County Sheriff's Department Policies and Procedures.

The 1973 Session Law, which has never been codified, **2** establishes

_____

**2** The relevant portions of 1973 Session Law 297 provide:

> Section 3. Duties of Personnel Advisory Board.  The duties of the Personnel Board shall be as follows:
>
> (1) to represent the public interest in the improvement of personnel administration;
>
> (2) to advise the Sheriff of Buncombe County concerning personnel administration, including minimum standards of

10

a three-member Personnel Advisory Board for the Sheriff's Department of Buncombe County, which is authorized to <u>advise</u> the Sheriff on various personnel matters and "to hear appeals, receive evidence, determine facts and <u>make recommendations</u> to the Sheriff in case of employee appeals of suspension, demotion and dismissal." 1973 N.C. Sess. 297, § 3(5) (emphasis added). Under § 4 entitled "General Principles," the law states that "[a]ll appointments and promotions shall be made solely on the basis of merit and fitness," <u>id.</u> at § 4(1), and that "any employee who contends that he was demoted, suspended or dismissed because of bias, political affiliation, or for reasons not related to merit, fitness or availability of positions, shall have the right to appeal to the Personnel Advisory Board," <u>id.</u> at § 4(3), but that ten-

_____

employment established by the Criminal Justice and Training and Standards Council, and the methods used to publish vacancies;

(3) to make any investigation which it may consider desirable concerning the administration of personnel in the Department;

(4) to advise the Sheriff on such personnel rules as he shall establish; and

(5) to hear appeals, receive evidence, determine facts and make recommendations to the Sheriff in case of employee appeals of suspension, demotion and dismissal.

 Section 4. General Principles.

(1) All appointments and promotions shall be made solely on the basis of merit and fitness and all residents of Buncombe County shall be given equal opportunity for employment without regard to race, religion, color, creed and national origin.

(2) Tenure of employees covered by this act shall be subject to good behavior, satisfactory work performance, necessity for performance of work, and the availability of funds.

(3) Any employee who contends that he was demoted, suspended or dismissed because of bias, political affiliation, or for reasons not related to merit, fitness or availability of positions, shall have the right to appeal to the Personnel Advisory Board.

11

ure of employees would remain "subject to good behavior, satisfactory work performance, necessity for performance of work, and the availability of funds," id. at § 4(2).

Penland and Jackson contend that these provisions of the Session Law should be interpreted to provide that they could be dismissed only for cause. We do not believe, however, that the plain meaning of the law's language supports that contention. Under a straightforward reading of the law, the Personnel Advisory Board in Buncombe County is given the duty to investigate personnel matters in order "to advise" the Sheriff on personnel policies and rules, and to hear appeals from employee suspensions, demotions, and dismissals in order to "make recommendations" to the Sheriff in respect to those appeals. In short, as its name suggests, the Board's function is advisory.

While the law also includes "general principles," these relate to how the Board must carry out its duties. We can find no provision that confers on Sheriff's Department employees a substantive property right in their employment. Indeed, while the law appears to give some procedural rights (rights that the employees in this case did not elect to use), the Board is given no right in the end to direct the Sheriff to do anything. And procedural rights in themselves do not create substantive property rights protected by the Fourteenth Amendment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) ("`Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty"); Olim v. Wakinekona, 461 U.S. 238, 250-51 (1982) (holding that the state may require procedures for reasons other than protection of substantive rights, but in so doing does not create independent substantive right); see also Beckham v. Harris, 756 F.2d 1032, 1037 n.8 (4th Cir.), cert. denied, 474 U.S. 903 (1985) (considering evidence that disciplinary guidelines in department personnel manual created an expectation that employee could be fired only for violation of specified conduct insufficient to establish a property interest in continued employment).

Buncombe County Sheriff's Department Policy 15 likewise is procedural, providing Jackson and Penland with no substantive right to retain their employment. The Policy provides procedures for "disciplinary action" and states, "The Sheriff may dismiss an employee for

12

disciplinary violations at his discretion." An appeal of disciplinary action may be taken to a "Sheriff's Advisory Board" if taken within five working days of the action, and the Board then conducts a hearing, after which it must make a written recommendation to the Sheriff. The recommendation may suggest greater or lesser disciplinary action, but the Sheriff is not bound by the recommendation. The policy provides, rather, that the Sheriff "may consider the report in making his final determination as to the action to be taken. In all cases, the Sheriff's decision shall be final."

Thus, we conclude that Jackson and Penland have no property right in continued employment, nor are they given substantive rights by the procedural protections afforded -- procedures which Jackson and Penland failed timely to use. See Loudermill, supra; Olim, supra; Garraghty v. Virginia Dep't of Corrections, 52 F.3d 1274, 1285 (4th Cir. 1995) (noting that state procedural requirements do not create a property interest in those procedures).

B

Jackson and Penland also contend that Sheriff Long deprived them of their liberty interest in their reputations without due process of law in violation of the Fourteenth Amendment. This claim is based on Sheriff Long's public statements about his actions in terminating the jailers and referring their conduct to the SBI for investigation. Jackson and Penland argue that even though Sheriff Long's statements may have been literally true, the statements suggest to the public that the two jailers were criminally responsible. Jackson and Penland also contend that the Constitution requires that they be provided with a due process "name-clearing" hearing.

Sheriff Long maintains that his statements about Jackson and Penland were entirely true. He observes that both Jackson and Penland were subject to a departmental investigation for violations of departmental policy, both had been dismissed for violation of that policy, both had been referred to the SBI for further investigation into possible violations of criminal law, and both could reapply for their jobs if cleared. He maintains that his public announcements and comments stated no more. He also noted that neither Jackson nor Penland demanded any "name-clearing" hearing.

13

It is well established that even if statements by public officials may have been defamatory under state law, that tort alone does not constitute a constitutional deprivation. See Siegert v. Gilley, 500 U.S. 226, 233 (1991); Zepp, 79 F.3d at 388. Rather, unjustified state action must so seriously damage the plaintiff's reputation and standing in his community as to foreclose his freedom to take advantage of other employment opportunities. See Zepp, id.

In this case, Sheriff Long was confronted with a serious allegation made against Jackson about his conduct at the detention center. Following an internal investigation, Long learned that Jackson had been on inmate Brock's floor without escort and that jailer Penland, who was on duty, failed to enforce a departmental policy that no males be left alone with female inmates. Whether Sheriff Long's judgment was right or wrong, he elected to terminate the at-will employment of both Jackson and Penland and to refer the assault complaint to the SBI to determine whether any criminal laws had been violated. In connection with this incident of high public concern, Sheriff Long issued a press release which accurately reported the complaint and his actions. He also stated publicly that the employees could seek reemployment if they were cleared. No one has alleged that Sheriff Long falsely reported the complaint or his actions.

While there can be no doubt that the announcement of an investigation places suspicion on those persons being investigated, that suspicion is inherent when undertaking any investigation. If Jackson and Penland suggest, however, that a constitutional deprivation of liberty results from an employer's public announcement of a criminal investigation into his employees' job performances, they have advanced no law supporting that suggestion. To impute knowledge to Sheriff Long of a constitutional transgression, the right would have to be clearly defined at the time.

C

The responsibility imposed on public officials to comply with constitutional requirements is commensurate with the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct. It is not measured by the collective hindsight of skilled lawyers and learned judges. And even that focused

hindsight cannot, in this case, justify the conclusion that Sheriff Long's dismissal of Jackson and Penland and his announcement of a criminal investigation violated clearly established constitutional rights. See Zepp, 79 F.3d at 388; Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982). Absent clearly established law that proscribed Sheriff Long's specific conduct, Sheriff Long should not be subjected to suit. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied , 506 U.S. 1080 (1993).

IV

As to the § 1983 claims purportedly made against Sheriff Long in his official capacity, Sheriff Long asserts that plaintiffs' complaints fail to state a claim against him in his official capacity because they do not allege that a custom or policy was the basis of a violation of the employees' constitutional rights. Long also asserts that he would be immune from any such claim under the Eleventh Amendment.

While the captions on the complaints in this case do indicate that Sheriff Long was sued in both his individual and official capacities, he correctly observes that the complaints' allegations relate only to Long's individual conduct. The complaints fail to allege a violation of a Sheriff's Department regulation, policy, or practice that authorized any constitutionally proscribed action taken against Jackson and Penland, and therefore the complaints fail to impute liability to the Sheriff in his official capacity. See Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 964 (4th Cir. 1995). Indeed, we cannot conceive how, in the context of this case, Jackson and Penland could have alleged a policy that commanded Sheriff Long's conduct in violation of their constitutional rights because, as we observed in our discussion of qualified immunity, his conduct violated no established constitutional right.

While we ordinarily would decide an immunity claim before reaching the merits of the underlying claim, cf. DiMeglio v. Haines, 45 F.3d 790, 797 (4th Cir. 1995) (stating that court should assess, before anything else, qualified immunity issue), when the complaint alleges no claim against which immunity would attach, we need not decide the immunity issue. Rather, in a rare exercise of pendent appellate

15

jurisdiction, see Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996); DiMeglio, 45 F.3d at, 807-08; O'Bar v. Pinion, 953 F.2d 74, 80 (4th Cir. 1991), we conclude that the district court should have granted Sheriff Long's motion to dismiss the complaint against him in his official capacity.

V

In summary, we conclude that Sheriff Long is entitled to qualified immunity from the 42 U.S.C. § 1983 claims made against him in his individual capacity and that the complaint does not adequately allege a claim against him in his official capacity. Accordingly, we reverse the district court's rulings on these issues and remand this case to the district court with instructions to dismiss all federal claims asserted against Sheriff Long.

REVERSED AND REMANDED WITH INSTRUCTIONS