**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

R. VINCENT LEWIS,
<u>Plaintiff-Appellant,</u>

v.

AMHERST COUNTY SCHOOL BOARD;
ROBERT J. GRANT, Principal of Amherst
County High School, in his official
and individual capacities; VIRGINIA
FARMER,
<u>Defendants-Appellees,</u>

and

No. 97-2350

DAVID L. MOSELEY; JOHN A. MARKS,
JR.; WILLIAM E. DAWSON, III; LESLIE B.
IRVIN; CHARLES R. JOLLEY; POPIE
MARTIN; ROBERT L. PERRY, members of
the Amherst County School Board in
their official and individual capacities;
JOHN J. DANIELS, Amherst County
School Board Division Superintendent
in his official and individual capacities,
<u>Defendants.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Jackson L. Kiser, Senior District Judge.
(CA-96-66-L)

Argued: May 5, 1998

Decided: June 5, 1998

Before HAMILTON and MOTZ, Circuit Judges, and BEEZER,
Senior Circuit Judge of the United States Court of Appeals
for the Ninth Circuit, sitting by designation.

Affirmed by unpublished opinion. Judge Hamilton wrote the opinion, in which Judge Motz and Senior Judge Beezer joined.

_____

**COUNSEL**

**ARGUED:** Sean Patrick McGinley, DITRAPANO & JACKSON, Charleston, West Virginia, for Appellant. Dennis Patrick Lacy, Jr., HAZEL & THOMAS, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Rudolph L. DiTrapano, DITRAPANO & JACKSON, Charleston, West Virginia, for Appellant. Brian R. Greene, HAZEL & THOMAS, P.C., Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

HAMILTON, Circuit Judge:

Vincent Lewis appeals the district court's order granting summary judgment to the Amherst County School Board (the Board), Amherst County High School (ACHS) Principal Robert Grant, and ACHS guidance counselor Virginia Farmer (collectively, the Defendants) as to Lewis' claims against the Defendants arising out of the decision not to renew Lewis' contract of employment as a guidance counselor at ACHS for the 1996-97 school year. Specifically, Lewis alleges that the Defendants' action in failing to renew his contract violated his First Amendment right to free speech, his Fourteenth Amendment rights to equal protection and procedural due process, and Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C.§ 2000d. Finding no error, we affirm.

I.

Lewis was hired on July 20, 1995 as a guidance counselor at ACHS for the 1995-96 school year. Pursuant to a written contract, his

2

employment was for one year and would have to be renewed by the Board for his employment to continue beyond the 1995-96 school year. Farmer was a guidance counselor at ACHS and director of the ACHS Guidance Department. Although Farmer was the director of the department, she did not have supervisory authority over Lewis and did not evaluate his performance.

According to ACHS officials, Lewis began complaining about the guidance department almost from the beginning of his employment. Specifically, in October and November 1995, Lewis complained to ACHS Principal Grant that the organization of the department was poor and that Lewis was prohibited from doing what he was hired to do. Similarly, Lewis complained to ACHS Assistant Principal Ernie Guill that the guidance office was not well organized and that the guidance counselors were incompetent.

In November 1995, Lewis' performance was evaluated by Guill who gave Lewis a very positive evaluation. Also in November 1995, Lewis complained that Farmer was opening his mail and that the student records were in disorder. Guill investigated Lewis' allegation that Farmer was opening his mail and concluded that the mail had been addressed to the guidance office and that Farmer had not acted improperly. With respect to the student records, Principal Grant stated in his affidavit that the records were somewhat in disorder but that this disorder resulted from several legitimate causes, including the department's recent move to new offices, the decision to combine certain classes of files, and a shortage of filing cabinets that were on order but had not arrived.

In December 1995, Lewis complained to Stephanie Dearing, Director of Personnel for the school system, and Superintendent of Schools John Daniels that certain students' files were missing. Although Lewis acknowledged in his deposition that going directly to the superintendent is not the normal avenue for pursuing complaints, he stated that he went to Dearing initially because she had hired him and he considered her a good person. As a result of Lewis' complaint, Superintendent Daniels visited ACHS the next day to investigate Lewis' allegations. Daniels spoke with both Grant and Guill who subsequently located the student records Lewis alleged were missing.

On January 5, 1996, Lewis met with the other members of the guidance department, including Farmer, Barbara Wood, and Karen Cecil. According to Lewis, at this meeting, Farmer instructed him that "since this was [his] first year at [ACHS] and [he] had not participated in registration before, . . . [he] needed to be aware that [he] was to discourage any black students from registering in advanced level or college prep courses." (J.A. 59). In response, Lewis allegedly asked Farmer to repeat her statement because he needed clarification, and she again stated that he was "to discourage black students from enrolling in advanced level and college prep courses" because there was such a small number of black students in those classes, they were made to feel uncomfortable. (J.A. 60-61). Lewis then told Farmer that he considered the policy to be "immoral and illegal." (J.A. 64).

During the next few weeks, Lewis complained to three assistant principals, including Guill, that Farmer had instructed him, at the January 5 meeting, to discourage black students from registering in advanced level or college preparatory classes. According to their affidavits, Guill and Assistant Principal Bruce McDade did not believe Lewis' allegation because Farmer had an excellent reputation as a guidance counselor and was both decent and honest. Although McDade stated that he spoke with Guill about Lewis' allegations, all three assistant principals stated in their affidavits that they never told Farmer, Grant, Daniels, or any member of the Board about Lewis' allegations against Farmer.

In late January and early February 1996, Grant began to hear from teachers and others in the Amherst community that Lewis was making derogatory comments about Farmer and other guidance counselors. Specifically, Grant stated in his affidavit that he received a phone call from a parent and from a former employee about Lewis' comments. Grant stated that none of the comments attributed to Lewis concerned the alleged discriminatory policy about which Lewis had complained to the assistant principals. Grant stated that also during this time, he began to feel a "tense" atmosphere in the guidance office and believed that teachers were questioning the guidance office's effectiveness as a result of Lewis' conduct. As January 1996 progressed, Grant began to consider recommending that Lewis' contract not be renewed because he lacked enthusiasm for his job, and his complaints and concerns about the guidance department were unfounded.

4

In mid-February 1996, Lewis complained to Grant about Farmer's instruction that black students should be discouraged from registering for advanced placement and college preparatory classes. Grant stated in his affidavit that he did not believe Lewis because he had witnessed Farmer's work with minority students and knew that she was a good guidance counselor. However, Grant told Lewis that he would take his concerns under advisement.[1]

On February 23, 1996, Grant met with Dearing and Assistant Superintendent of Schools Lee Paris to discuss the probationary employees on his staff and his recommendations. According to Grant, Paris and Dearing informed him during that meeting that Lewis was "saying negative and derogatory things" about the guidance department and about Grant's job performance. (J.A. 173). Grant asserts that Paris and Dearing stated that Lewis was making these comments to teachers and to members of the community. Grant did not tell Paris or Dearing about his conversation with Lewis a few days earlier during which Lewis had accused Farmer of instructing him not to place black students in higher level courses.

Toward the end of February 1996, Grant met with the guidance department concerning student course selections and various prerequisites that had been changed from the previous school year. Lewis was present at the meeting, as were Farmer, Wood, Cecil, and Pat Henley, an African-American guidance counselor. During the meeting, Grant made the comment that he wanted to make sure that all of the guidance counselors did everything they could to encourage all the students, particularly minority students, to "take a challenging program of studies." (J.A. 115). In particular, Grant commented on music and other specific classes in which he wanted to try to increase minority participation. At some point during the meeting, Lewis had to leave to go to a child study meeting, and after he left, the other counselors asked Grant if he could stay and talk. During that time,

_____

[1] We note that Farmer flatly denied Lewis' assertion that she instructed him not to register black students for higher level courses. Wood and Cecil, the other two guidance counselors present at the January 5 meeting, both testified in their depositions that they did not recall any discussions at the January 5 meeting concerning minority registration in advanced level classes, as alleged by Lewis.

5

Grant mentioned to the other counselors that it had been reported to him that the guidance counselors were discouraging black students from taking academically challenging classes. According to Grant, he did not identify Lewis as the person who had complained about the policy. Although the other counselors did not ask specifically who had made the accusation, they did express concern during this part of the meeting about Lewis' behavior and general performance in and around the guidance department.

Cecil corroborated Grant's account of the late February 1996 meeting, stating in her deposition that after Lewis left the meeting, the discussion was about negative comments Lewis was making about the guidance department. Farmer also testified in her deposition about this meeting and stated that at no time during the meeting did Grant discuss whether or not Lewis was going to be recommended for a renewal of his contract. Farmer stated further that, also in late February, she complained to Grant that other faculty members had come to the guidance department and informed the counselors that Lewis was in the teachers' workroom talking about members of the guidance department and about Grant in a derogatory fashion. According to Farmer, she also complained to Grant that Lewis would stay away from the guidance office for long periods of time and that other members of the department did not know where he was.

On February 28, 1996, Grant informed Lewis and two other probationary employees that he would be recommending that their contracts not be renewed for the 1996-97 school year. In Amherst County, the principal of the school makes a recommendation to the superintendent regarding whether to renew a probationary employee's contract. The superintendent then makes his own recommendation to the Board concerning the employee's contract, and the superintendent has the authority to follow the principal's recommendation, to reject it, or to amend it. The ultimate and final decision then rests with the Board.

Regarding his decision not to recommend the renewal of Lewis' contract, Grant stated in his affidavit that he was troubled by "Lewis' complaints and attitude, and the fact that he was publicly bad-mouthing the guidance office," which Grant stated was inexcusable. (J.A. 173). Grant stated further that Lewis had demonstrated a "lack

6

of commitment" by taking his complaints directly to Daniels, rather than through the normal channels at ACHS. Id. Grant stated that he made his recommendations concerning the renewal of probationary employees' contracts in order to enable all parties involved to have adequate time to conform to the procedural rules for non-renewal set forth in the Virginia Code. According to Grant, the fact that his recommendation not to renew Lewis' contract came close in time to his meeting with Lewis in which Lewis alleged that Farmer had instructed him not to place black students in higher level courses was "merely consequential," and his decision would have been the same had Lewis not told him about Farmer's alleged comments. (J.A. 174).

Based on Grant's recommendation, Daniels recommended to the Board that Lewis' contract not be renewed. In mid-March 1996, the Board requested a memorandum setting forth the chronology of events leading up to Grant's decision to recommend that Lewis' contract not be renewed. Daniels then asked Grant to author the memorandum, and Grant complied. The memorandum was subsequently presented to the Board, and on April 18, 1996, the Board voted not to renew Lewis' contract.

On December 23, 1996, Lewis filed this action in the United States District Court for the Western District of Virginia against the Board, each individual member of the Board, Superintendent Daniels, Principal Grant, and Farmer. In his complaint, Lewis alleged, pursuant to 42 U.S.C. § 1983, that the defendants had violated his First Amendment right to free speech by retaliating against him for expressing his opposition to the guidance department's alleged policy of discouraging black students from enrolling in higher level academic courses. Lewis also alleged that this same retaliatory conduct violated his equal protection rights under the Fourteenth Amendment and Title VI. With respect to his procedural due process claim, Lewis alleged that the defendants failed to adhere to the procedures set forth in the Virginia Code for the non-renewal of his contract, see Va. Code § 22.1-305 (Michie 1997), violating his procedural due process rights under the Fourteenth Amendment. Finally, Lewis alleged that the defendants conspired to violate his civil rights and those of black students at ACHS in violation of 42 U.S.C. § 1985.

Lewis subsequently voluntarily dismissed all of his claims against Daniels and the individual members of the Board and his § 1985

claim against the Defendants. On September 18, 1997, the district court granted summary judgment to the Defendants on Lewis' remaining claims, and Lewis noted a timely appeal.

II.

We review a district court's grant of summary judgment de novo. See Karpel v. Inova Health Sys. Serv., 134 F.3d 1222, 1226 (4th Cir. 1998). In reviewing the district court's grant of summary judgment, we must construe the facts in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

A.

Lewis first argues that the district court erred in granting summary judgment to the Defendants as to his claims under the First and Fourteenth Amendments and Title VI. Specifically, in his complaint, Lewis alleges that the Defendants' conduct in failing to renew his contract in retaliation for his stated objection to the alleged racially discriminatory policy violated his right to free speech under the First Amendment, his right to equal protection under the Fourteenth Amendment, and Title VI. As asserted, each of these claims depends on the conclusion that Lewis' objection to the alleged discriminatory policy motivated, at least in part, the decision not to renew Lewis' contract for the 1996-97 school year.

In granting summary judgment to the Defendants, the district court held that Lewis had failed to produce sufficient evidence from which a reasonable jury could conclude that there was a causal relationship between the decision not to renew Lewis' contract and his opposition to the alleged discriminatory policy. After discussing each type of evidence Lewis argued to be probative, the district court concluded that the strongest evidence of a causal relationship between Lewis' opposition to the alleged policy and the decision not to renew his contract was the timing of the decision not to renew Lewis' contract, which occurred shortly after he voiced his objection to the alleged policy. The district court noted, however, that there was no evidence that Lewis' objection to the alleged policy was ever mentioned at any meeting where Lewis' non-renewal was discussed with Grant, nor

8

was there any evidence contradicting the Defendants' assertion that the decision not to renew Lewis' contract was made at the time it was made in order to comply with procedural deadlines imposed on school officials. Additionally, the district court noted that all three of the probationary employees whose contracts were not being renewed, including Lewis, were notified of Grant's decision on the same day. The district court concluded that the close temporal relationship between Lewis' objection to the alleged policy and the decision not to renew his contract, standing alone, was insufficient evidence from which a reasonable jury could conclude that Lewis' objection to the policy was a motivating factor in the decision not to renew his contract. Accordingly, the district court granted the Defendants' motion for summary judgment as to Lewis' free speech, equal protection, and Title VI claims.

We have carefully examined the record, the briefs, the arguments of counsel, and the opinion of the district court. We agree with the district court that Lewis failed to produce sufficient evidence from which a reasonable jury could conclude that the decision not to renew his contract was motivated, in part, by Lewis' objection to the ACHS Guidance Department's alleged policy of discouraging black students from enrolling in advanced level academic courses. Accordingly, we affirm the grant of summary judgment to the Defendants on Lewis' free speech, equal protection, and Title VI claims on the reasoning of the district court.[2] See Lewis v. Amherst County Sch. Bd., No. CV-96-0066-L (W.D. Va. Sept. 18, 1997).

B.

Lewis next argues that the district court erred in granting the

---

[2] In arguing that the district court properly granted their motion for summary judgment as to Lewis' Title VI claim, the Defendants argue, in part, that Title VI does not afford a private cause of action against an individual defendant. Because we affirm the district court's grant of summary judgment on Lewis' Title VI claim on the basis that Lewis has not produced sufficient evidence to support his assertion that his objection to the alleged policy motivated the decision not to renew his contract, we do not decide whether Title VI affords a cause of action against individual defendants.

9

Defendants' motion for summary judgment as to his claim that the Defendants' failure to adhere to certain procedural requirements contained in the Virginia Code violated his right to procedural due process under the Fourteenth Amendment. In order to establish a procedural due process violation, a plaintiff must show that he has a constitutionally protected liberty or property interest and that he has been deprived of that interest by some sort of state action. See Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990). In Board of Regents v. Roth, 408 U.S. 564 (1972), the Supreme Court made clear that in order for a plaintiff to have a constitutionally protected property interest in a particular benefit, he must "have a legitimate claim of entitlement to it." Id. at 577; see also Mallette v. Arlington County Employees' Supplemental Retirement Sys. II, 91 F.3d 630, 634-35 (4th Cir. 1996). In this case, Lewis argues that he has a protected property interest in continued employment under Virginia law, even as a probationary employee, unless and until he is given an explanation of the reasons for his dismissal and the opportunity to discuss those reasons with a school official. For support, Lewis relies on Virginia Code § 22.1-305, which provides that before a superintendent recommends to the school board the non-renewal of a probationary teacher's employment, the superintendent shall notify the teacher of the proposed recommendation and shall orally provide specific reasons for the recommendation, upon written request of the teacher. See Va. Code § 22.1-305 (Michie 1997).

Contrary to Lewis' suggestion, this provision does not create a constitutionally protected property interest in continued employment, but rather, merely provides the procedures by which a probationary employee's employment may be terminated. As set forth above, in order for a constitutionally protected property interest to be created, a plaintiff asserting a property interest in continued employment must have a claim of entitlement to continued employment, not merely an "expectancy." See Mallette, 91 F.3d at 635. This Virginia Code provision in no way legally entitles a probationary teacher to further employment, nor does it provide that if its procedural requirements are not followed, the employee may not be terminated. Rather, it merely establishes the state's policy regarding the procedures through which an employee's contract should not be renewed. See Jackson v. Long, 102 F.3d 722, 729 (4th Cir. 1996) ("[P]rocedural rights in themselves do not create substantive property rights protected by the

10

Fourteenth Amendment."). In sum, as a probationary employee, Lewis cannot establish that he had a legitimate claim of entitlement to the renewal of his contract and, therefore, he cannot establish that he had a constitutionally protected property interest that was impaired in violation of the Fourteenth Amendment.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

11