**BRICKYARD HOLDINGS, INC., Plaintiff,**

v.

**BEAUFORT COUNTY and Hillary A. Austin, Zoning Administrator, Defendants.**

**C.A. No. 9:07–2538–PMD.**

United States District Court, D. South Carolina, Beaufort Division.

Dec. 27, 2007.

Ellison Durant Smith, IV, Smith Bundy Bybee and Barnett, Mt. Pleasant, SC, for Plaintiff.

Mary Bass Lohr, Robert W. Achurch, III, Howell Gibson and Hughes, Beaufort, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Defendants' Motion to Dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants assert that this court does not have subject matter jurisdiction to hear the claims, and that even if the court does have such jurisdiction, Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff disputes both claims, and asserts that the facts as alleged support seven distinct causes of action, none of which should be dismissed at this time. For the reasons set forth herein, Defendants' Motion to Dismiss as to Plaintiff's sixth cause of action is dismissed, and the remainder of the case is remanded to the Beaufort County Court of Common Pleas for final resolution.

## BACKGROUND

Plaintiff Brickyard Holdings, Inc. ("Plaintiff") is a South Carolina corporation which owns property in Beaufort County. One of the Beaufort County properties owned by Plaintiff is a subdivision known as Mint Farm, within which Plaintiff was hoping to develop, build, and sell a number of homes.

On June 15, 2005, Beaufort County issued Plaintiff a development permit for the property. Plaintiff constructed the roads and drainage for the subdivision, and as part of the agreement to get the development permit, posted a letter of credit in the amount of $700,000, as mandated by county ordinance. This amount was to be cancelled by the county upon completion of the project, assuming Plaintiff had complied with all County requirements. On April 6, 2006, Plaintiff conveyed the roads and drainage to Beaufort County, and these deeds were recorded on May 15.

Six days prior to the deeds being recorded, on May 9, sales commenced with the closing on seventeen lots within the subdivision. Building of residential dwellings began on these lots shortly thereafter. On May 26, in response to an inquiry by Plaintiff, Defendant Hillary Austin ("Austin") provided Plaintiff with a list of four

things that needed to be accomplished before the County would issue a certificate of compliance, one of which was that "your engineer shall certify to the County Engineer that the project is complete. Please speak to Mr. Klink's [the County Engineer] assistant to ensure what is needed from that office."

On August 8, Plaintiff reported that all conditions had been completed. However, the County Engineer disagreed, and on August 22, after inspecting the property, provided Plaintiff with a twelve item "punch list" of tasks that needed to be completed before a certificate of compliance would be issued.[1] The tenth item on this list was "installation of turn lane at Broad River and Alston Drive." On September 12, Plaintiff responded to the County Engineer that it had already completed or was nearing completion on all of the items on the punch list with the exception of installing the turn lane, regarding which it wrote, "[t]he installation of this turning lane was never made a requirement of the approval of the S/D [subdivision]. Please have this item deleted."

On December 22, Plaintiff entered into a contract with Stevens Builders ("Stevens") to sell thirteen lots in the subdivision for $770,000. Before the closing, however, the County informed Stevens that it would not approve building permits for lots in the subdivision because of Plaintiff's noncompliance. Based on this information, Stevens refused to purchase the thirteen lots.

On January 31, 2007, the County Engineer sent Plaintiff another "punch list" containing seventeen tasks to be completed before a certificate of compliance would be issued. While it was not one of the seventeen items, this correspondence also informed Plaintiff that "the County has required the construction of a turning lane

for this subdivision at the intersection of Alston Drive and Broad River Blvd. And no action has been taken to meet this requirement." The letter also warned that if Plaintiff did not fully comply, no further construction would be allowed in the subdivision.

On February 5, Austin notified Plaintiff that their letter of credit was set to expire on March 27, and that if Plaintiff did not produce proof of a renewal by February 27, the County would withdraw the full amount of $700,000. On February 21, the County Engineer reported that he had inspected the property, and while some progress had been made, the issues on the punch list had not been sufficiently addressed to issue a certificate of compliance. On February 26, Plaintiff renewed its letter of credit to avoid the threatened withdrawal by the County.

Around this time, Plaintiff received another complaint from a prospective purchaser who was unable to get building permits approved by the County. On April 11, the County conveyed all deeds to the roads and drainage in the subdivision back to the Plaintiff. Plaintiff refused to accept delivery of these deeds.

On June 18, Plaintiff filed a Complaint in the Beaufort County Court of Common Pleas, alleging seven separate causes of action:

(1) Wrongful forced renewal of the Plaintiff's letter of credit
(2) Wrongful suspension of the issuance of building permits
(3) Wrongful imposition of additional conditions to get a certificate of compliance
(4) Conveying the road and drainage deeds back to Plaintiff

---

1. Four of these twelve items, however, were noted as "done," presumably meaning that

Plaintiff only had eight tasks left to complete.

(5) Gross negligence under South Carolina Tort Claims Act ("SCTCA")

(6) Declaratory judgment under 42 U.S.C. § 1983 of the Civil Rights Act

(7) Writ of mandamus

The first, second, fifth, and seventh causes of action were alleged against both Defendants. The third and fourth causes of action were alleged only against the County, and the sixth cause of action was alleged only against Austin. The Complaint specified that Austin was being sued "in her individual capacity." This action was removed to federal court on July 24 on the basis of the sixth cause of action, which is a cause of action originating under federal law. On October 23, Defendants filed the present motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to which Plaintiff filed a Response in Opposition on November 6.

### STANDARD OF REVIEW

■■■ A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972). If, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for sum-

mary judgment and disposed of as provided in Rule 56. Fed.R.Civ.P. 12(b).

■■■ When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, the plaintiff has the burden of proving jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.,* 945 F.2d 765, 768 (4th Cir. 1991). In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings. *See Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.; see also Richland–Lexington Airport Dist. v. Atlas Properties,* 854 F.Supp. 400, 407 (D.S.C.1994) (cogently explaining the differences between dismissal procedure under Rule 12(b)(1) and summary judgment under Rule 56(c)).

### ANALYSIS

### I. Plaintiff's Claim under 42 U.S.C. § 1983

Plaintiff has asserted a cause of action for a declaratory judgment against Austin under 42 U.S.C. § 1983, a provision of a the Civil Rights Act which gives citizens a private cause of action against officials acting under color of state law who deprive them of "any rights, privileges, or immunities secured by the Constitution and laws ..." 42 U.S.C. § 1983 (2006). Plaintiff alleges that Austin violated its Due Process Clause rights and effected an unconstitutional taking of its property, and thus should be held personally liable for actual damages and attorney fees. (Complaint ¶¶ 56–62.)

Defendant asserts that Plaintiff's § 1983 claim should be dismissed, because Plaintiff does not allege that it or any other

builders were actually denied building permits for which they applied (only that Defendants informed Plaintiff and builders that they would not approve permits if they were applied for), that Plaintiff has not alleged any property right that was "taken," that Plaintiff voluntarily chose to renew its letter of credit, and that it did not exhaust the applicable administrative avenues of appeal. (Defs.' Mot. to Dismiss at 9.) In response, Plaintiff claims that no applications for building permits were submitted because Defendant affirmatively stated that any such applications would be denied, so such an action would have been futile. (Pl.'s Mem. in Opp'n at 11.) This, in turn, resulted in the loss of valid purchase contracts on the property, which constituted a taking of Plaintiff's property interest. *Id.* Furthermore, Plaintiff claims that it was forced to renew its letter of credit under threat of the County wrongfully seizing the initial letter of credit. *Id.*

■■■ However, a crucial issue which Defendant Austin failed to raise is the issue of whether she enjoys qualified immunity from a § 1983 action. "Qualified immunity may be invoked by a government official sued in his personal, or individual, capacity." *Ridpath v. Board of Governors Marshall University,* 447 F.3d 292, 306 (4th Cir.2006). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "An official's actions violate a 'clearly established' constitutional right only if 'in the light of preexisting law, the unlawfulness' of the actions is apparent." *Johnson v. Caudill,* 475 F.3d 645, 650 (4th Cir.2007) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

"Absent clearly established law that proscribed [an official's] specific conduct, [the official] should not be subjected to suit. 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Jackson v. Long,* 102 F.3d 722, 731 (4th Cir.1996) (quoting *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992)). In determining whether an official has violated a clearly established constitutional right, the court "consider[s] first whether those rights clearly existed and, if so, then whether a reasonable officer in [the official's] position would have appreciated he was violating those rights." *Id.* at 728.

There is no doubt that Austin is only being sued in her individual, and not her official capacity. Plaintiff clearly made this distinction in the original Complaint and in subsequent filings. The issue that must be decided by this court, then is whether Austin violated a clearly established constitutional right of the Plaintiff. As articulated in *Jackson,* this involves a two-part inquiry into (a) whether the rights clearly existed, and (b) whether a reasonable officer in Austin's position would have known that she was violating those constitutional rights.

The facts, as alleged by Plaintiff, are insufficient to support a § 1983 cause of action against Austin. For this court to hold otherwise would dramatically undermine local government's ability to regulate conditions of construction and neighborhood design, which are issues that are vital to public health and safety, aesthetics, ensuring basic habitability for home buyers, and protecting the property values of other homeowners. The tasks that the County Engineer (not Austin) required Plaintiff to complete before a certificate of compliance was issued concerned issues like drainage, sewage, installing a turn lane for traffic safety, removal of dead trees, land-

scaping relating to erosion control, the emergence of potholes in the relatively new pavement because it was too thin, and the erection of traffic control signs on neighborhood streets.

While the court is certainly not qualified to pass judgment on the work of the County Engineer, these tasks are all related to eminently legitimate goals of the County government in protecting the interests of its citizens. To further interests such as these and to ensure compliance with the directives of the County Engineer, the County must have some way to force developers like Plaintiff to complete the required tasks. As with any situation, there are two general ways to ensure compliance—the County could use "the stick" and affirmatively punish developers who refused to comply with criminal punishment or fines, or the County could use "the carrot" and withhold something the developer desires, like building permits, until all conditions are complied with. Here, the County has sensibly opted to use the carrot. To make this system work, then, on occasion Austin will have to withhold building permits when the County Engineer reports to her that a developer refuses to comply with the given requirements.

Under the facts as alleged by Plaintiff, this appears to be precisely what occurred in the events that gave rise to this litigation. Plaintiff was issued a development permit on June 15, 2005, and almost twenty-two months later, on April 11, 2007, Plaintiff still had not satisfied the County Engineer's requirements sufficiently to receive a certificate of compliance. Given such a delay and failure to meet the County's requirements, the court must conclude that Austin's actions in representing that no building permits would be approved were perfectly reasonable measures taken to both incentivize Plaintiff to make the required improvements so its subdivision would be in compliance with County standards, and to guard against the construction of homes in a substandard neighborhood if Plaintiff refused to do so.

The court emphasizes that it is not holding that the requirements of the County Engineer were reasonable—Plaintiff alleges that they were not, and for the purposes of a motion to dismiss, this courts accepts those allegations as true. However, Austin was not the County Engineer. Austin's job necessarily requires a reliance on the County Engineer to decide whether subdivisions like Mint Farm are in compliance with County standards or not. The County Engineer repeatedly informed Austin that Plaintiff was not in compliance. Given this, Austin's job was to decide whether to issue building permits to builders interested in building in Mint Farm or not.

▪ Under the Fourth Circuit's holding in *Jackson,* in order to hold that Plaintiff has a valid § 1983 claim against Austin, the court must "consider first whether [Plaintiff's constitutional] rights clearly existed and, if so, then whether a reasonable officer in [Austin's] position would have appreciated [s]he was violating those rights." *Jackson,* 102 F.3d at 728. Regardless of whether Plaintiff had a constitutional right to make sure prospective builders could receive building permits when Plaintiff had not complied with the County Engineer's requirements, the court cannot rule that a reasonable officer in Austin's position, being informed only that Plaintiff had not taken the required steps to receive a certificate of compliance, would have thought she was violating Plaintiff's constitutional rights by no longer issuing building permits on lots in Mint Farm.

Similarly, Austin is also entitled to qualified immunity on the issue of whether she forced Plaintiff to renew its letter of credit. Requiring subdivision developers to post

such a letter of credit is essentially a bond to ensure compliance with all County requirements. As with the discretion to deny building permits, the County has decided that having a valid letter of credit is necessary to ensure compliance with all requirements. The court can find no evidence in Plaintiff's allegations that Austin's act of informing Plaintiff that its letter of credit was about to expire and that renewal was required was in any way improper. All evidence indicates that Austin was simply taking steps to make sure Plaintiff maintained a valid letter of credit that signified it would comply with all County requirements.

Accordingly, Defendant Austin enjoys qualified immunity from Plaintiff's § 1983 suit, and therefore Plaintiff's sixth cause of action fails as a matter of law and should be dismissed.

## II. Federal Jurisdiction Over the Remaining Causes of Action

Since Plaintiff's § 1983 cause of action was the only claim over which this court had original jurisdiction, and the sole ground for this case's removal to federal court, this court must address the issue of whether this case should be remanded to state court before delving into the substance of Plaintiff's remaining causes of action.

■■■■ "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (2006). The fact that neither party has moved for remand is immaterial—a federal court has not only a right but a duty to inquire *sua sponte* into whether subject matter jurisdiction exists if the basis of such jurisdiction appears questionable. *See Roche v. Lincoln Property Co.*, 373 F.3d 610 621 (4th Cir.2004), reversed on other grounds by *Lincoln Property Co. v. Roche*, 546 U.S. 81, 126 S.Ct. 606, 163

L.Ed.2d 415 (2005) ("Because the parties may not waive or consent to federal subject matter jurisdiction—indeed we must raise *sua sponte* if jurisdiction appears questionable—the nominal parties cannot provide a valid basis for finding jurisdiction."). "[I]t is well-settled that courts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Id.* at 615 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). "[W]hen an action has been removed from state court and the district court subsequently loses its basis for original jurisdiction, in most instances the action must be remanded to the state court." *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 196 (4th Cir.2002). The Supreme Court has held that when a federal court resolves a question of federal law which was the basis of federal jurisdiction, it may remand the remaining state law claims to state court where doing so would serve the interests of "economy, convenience, fairness, and comity." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

■■■■ Here, all events that are relevant to this litigation took place in the Beaufort area, the parties are located in the Beaufort area, and the Court of Common Pleas has more expertise and familiarity both with the County procedures at issue and the law regarding the remaining six causes of action, all of which are grounded in state law.

Accordingly, the court remands the remaining six causes of action back to the Beaufort County Court of Common Pleas for final resolution.

### CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion to

Dismiss as to Plaintiff's sixth cause of action, that Defendant Austin violated its constitutional rights and it is entitled to relief under 42 U.S.C. § 1983, be **GRANTED** because Austin enjoys qualified immunity from such a claim. It is further **ORDERED,** for the foregoing reasons, that Plaintiff's remaining six causes of action be **REMANDED** to the Beaufort County Court of Common Pleas.

**AND IT IS SO ORDERED.**