**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANGELA JOHNSON,

*Plaintiff-Appellee,*

v.

No. 06-1281

H. S. CAUDILL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, Chief District Judge.
(1:04-cv-00128-JPJ)

Argued: October 26, 2006

Decided: February 2, 2007

Before WILKINS, Chief Judge, and WIDENER and
DUNCAN, Circuit Judges.

Reversed and remanded by published opinion. Judge Duncan wrote
the opinion, in which Chief Judge Wilkins and Judge Widener joined.

**COUNSEL**

Elizabeth Kay Dillon, GUYNN, MEMMER & DILLON, P.C., Roa-
noke, Virginia, for Appellant. Hilary Kathleen Johnson, Abingdon,
Virginia, for Appellee.

**OPINION**

DUNCAN, Circuit Judge:

Following her discharge, Tazewell County, Virginia narcotics officer Angela Johnson ("Johnson") sued County Sheriff H. S. Caudill ("Sheriff Caudill") in his individual capacity pursuant to 42 U.S.C. § 1983, contending that she was terminated because of her gender. Sheriff Caudill moved for summary judgment based on qualified immunity, which the district court denied, finding that factual disputes existed. Because a reasonable official in Sheriff Caudill's position would not have considered the termination to violate Johnson's clearly established constitutional rights, however, we find Sheriff Caudill entitled to qualified immunity and reverse.

I.

Because this case presents an appeal from a denial of summary judgment based on qualified immunity, "we accept as true the facts that the district court concluded may be reasonably inferred from the record when viewed in the light most favorable to the plaintiff." *Waterman v. Batton*, 393 F.3d 471, 473 (4th Cir. 2005). Where, as here, "the district court has not fully set forth the facts on which its decision is based," we supplement the district court's finding of facts with the facts we ourselves may reasonably "infer[ ] from the record when viewed in the light most favorable to the plaintiff." *Id.* Applying those principles, the facts underlying this appeal are as follows.

Sheriff Caudill hired Johnson in 2001 to work as an undercover narcotics officer. Johnson was hired specifically to fill an undercover narcotics officer position requiring work with a drug task force managed by the Virginia State Police.[1] Johnson's work consisted of identifying sources for narcotics, gaining intelligence, and making narcotics purchases using Virginia State Police funds.

As an outgrowth of that work, Johnson testified before a grand jury

---

[1]Johnson had expressed in her employment application a desire to work as either a patrol officer or an undercover narcotics officer.

in 2002, dissolving her undercover status. She then began working in the Sheriff's office as a narcotics detective. Her new position was similar to her previous position, but she consummated drug purchases by utilizing confidential informants instead of transacting the deals herself.

The Virginia State Police requires its drug task force members (like Johnson) to comply with certain requirements in effectuating and reporting drug purchases. First Sergeant John Ruffin ("Sergeant Ruffin") of the Virginia State Police bore supervisory responsibility over Johnson's task force unit. Sergeant Ruffin avers that he met with Johnson in December 2003 to discuss discrepancies he believed existed in her reports of a particular drug transaction. According to Sergeant Ruffin, Johnson had filed a report inconsistent with the primary audio recording of the transaction. Johnson then admitted that the report was inaccurate. Sergeant Ruffin requested that Johnson produce a secondary recording of the transaction to resolve the discrepancies, but Johnson delayed for several weeks in doing so, ultimately submitting only garbled audio. After conferring with his supervisor, Sergeant Ruffin decided that the Virginia State Police would no longer fund Johnson's drug purchases, effectively ending her ability to work with the drug task force.

Johnson does not dispute the fact that the Virginia State Police refused to work with her after the December 2003 meeting, but does dispute the existence of any meaningful discrepancies in her reports. When Sheriff Caudill learned in February 2004 that Johnson could no longer perform her central job function, he met with Johnson requesting an explanation. Because Johnson was unable to offer an explanation of the incident sufficient to reverse the decision of the Virginia State Police, Sheriff Caudill terminated Johnson's employment.

Following her termination, Johnson sued Sheriff Caudill in his individual capacity under § 1983, alleging, inter alia, violations of her rights under the equal protection clause of the Fourteenth Amendment.[2] In addition to alleging that she was terminated because of her gender, Johnson cites several instances during her tenure with Sheriff Caudill

---

[2]Johnson's other claims have already been dismissed and are not before us on appeal.

in which she claims that he discriminated against her because of her gender.[3] These allegations fall into two categories: written requests for equipment that Sheriff Caudill denied, and personal conversations in which Sheriff Caudill discriminated against her.

On two occasions in late 2003, according to Johnson, she submitted written requests to Sheriff Caudill to obtain her own computer, internet access, and the "Sheriff's Pack" software program. However, the male detectives in the office did not have the Sheriff's Pack software either, nor were they provided with free internet access. One male detective helped Johnson piece together a computer from spare parts located in the jail, just as he had done for himself. Finally, Johnson admits that she always had ample access to computers elsewhere in the office.

Johnson also describes three conversations with Sheriff Caudill in which he allegedly discriminated against her. First, shortly after Johnson began dating a fellow officer on her drug task force, Sheriff Caudill told her that she would be terminated if she stayed overnight in the same residence with him.[4] Johnson does not contest, however, that Sheriff Caudill warned the unmarried male officers under his charge that they too would face disciplinary action for similar conduct.

---

[3]Many of these allegations relate to Johnson's working conditions and not to any specific actions of Sheriff Caudill in his individual capacity. For example, Johnson insists that because of her gender she was denied the patrol officer assignments she desired. However, she alleges only that she informed other supervisors, not Sheriff Caudill, of her ongoing wish to work patrol. Similarly, Johnson describes a number of items of equipment that she requested verbally, but such requests were processed by office manager Sean Hurd, not Sheriff Caudill. These allegations may have been appropriate for a Title VII action, but lack sufficient connection to Sheriff Caudill's actions to spawn individual-capacity liability under § 1983.

[4]It is not clear on the record what legal basis underpinned Sheriff Caudill's interest in the sleeping arrangements of his employees. It suffices here, however, to note that Johnson has only alleged gender discrimination, and we therefore need not inquire further into the propriety of Sheriff Caudill's cohabitation policy.

Second, Johnson was suspended for three days for speeding in 2002. Johnson admits that she had exceeded the speed limit, and does not contest that three days' suspension is the standard discipline for speeding, administered to males and females alike. Nevertheless, Johnson mentioned to certain coworkers that she was considering pursuing legal action against Sheriff Caudill. When Sheriff Caudill learned of Johnson's intentions, he called a meeting with her at which time he allegedly told her that he was "not afraid of lawsuits" and would "no longer need" Johnson if she filed suit. J.A. 83.

At the same meeting, Johnson complained to Sheriff Caudill about a four-week training program that she, but not certain male coworkers, was required to undertake. Sheriff Caudill allegedly told her not to question him regarding the training program. Johnson does not dispute that the training program was instituted before her date of hire but after the dates of hire of her male coworkers.

Third, Johnson describes a brief conversation with Sheriff Caudill in which she complained that she was lacking certain equipment. Sheriff Caudill allegedly told her that she would "just ha[ve] to make d[o]." J.A. 151. Sheriff Caudill does not recall such a conversation.

In response to Johnson's claims, Sheriff Caudill filed a motion for summary judgment on the grounds that Johnson could not prove a case of gender discrimination and that Sheriff Caudill is entitled to qualified immunity from suit. The district court denied the motion, finding that Johnson had presented sufficient evidence to permit resolution of her claims at trial and that sufficient factual disputes forestalled a ruling that Sheriff Caudill enjoys qualified immunity.

Sheriff Caudill now appeals.

## II.

"[I]nterlocutory rulings on qualified immunity are ordinarily immediately appealable as collateral orders." *Jackson v. Long*, 102 F.3d 722, 726 (4th Cir. 1996); *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Nevertheless, Johnson argues that, following *Johnson v. Jones*, 515 U.S. 304 (1995), the existence of disputed issues of fact

prevents this court from exercising jurisdiction to review the issue of qualified immunity. *See id.* at 319-20 (holding that a defendant, though he may be entitled to qualified immunity from suit, may not appeal a denial of summary judgment "insofar as that [denial] order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial").

Johnson's argument is foreclosed by later cases clarifying *Johnson*. One term after the Supreme Court decided *Johnson*, the Court again heard a case in which the district court had denied a motion for summary judgment made on qualified immunity grounds. *See Behrens v. Pelletier*, 516 U.S. 299 (1996). In *Behrens*, the respondent argued that such a denial was not immediately appealable "because the denial rested on the ground that '[m]aterial issues of fact remain.'" *Id.* at 312. The Supreme Court held that the respondent had misread *Johnson*:

> Denial of summary judgment often includes a determination that there are controverted issues of material fact, and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable. . . . *Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity . . . .

*Id.* at 313 (internal citations omitted). Following *Behrens*, the Fourth Circuit has accepted jurisdiction of interlocutory appeals even though factual disputes remained unresolved. *See, e.g.*, *Jackson*, 102 F.3d at 727 (4th Cir. 1996); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).

For example, in *Jackson*, two discharged jailers sued a sheriff under § 1983, alleging deprivation of certain property and liberty interests without due process of law in violation of the Fourteenth Amendment. 102 F.3d at 724. Despite the persistence of disputed questions of fact, including whether the jailers actually participated in the punished conduct, this court found such questions "not material to the abstract question of [the] Sheriff['s] immunity, which depends on whether [he] violated clearly established constitutional rights and whether he reasonably should have so known." *Id.* at 727. That is, the

*Johnson* principle is limited to the circumstance where the dispute on appeal is whether a factual dispute was created. If, however, resolution of the factual dispute is immaterial to whether immunity should be afforded, the underlying legal question about whether immunity is to be afforded remains and may be appealed under *Mitchell* as a collateral order.

*Id.*

In the instant case, the district court's ruling that summary judgment is inappropriate because of the existence of disputed facts is not in itself immediately appealable. The "abstract" question of whether Sheriff Caudill is entitled to qualified immunity, however, is indeed immediately appealable under *Behrens* and *Jackson*. Thus, "[a]lthough the district court denied summary judgment on the ground that a material issue of fact exists, this interlocutory appeal is not improper under *Johnson*." *Elliott*, 99 F.3d at 644. We proceed mindful that we retain jurisdiction *only* to decide the availability of the qualified immunity defense to Sheriff Caudill, not to resolve factual disputes.

### III.

We review de novo the district court's denial of Sheriff Caudill's motion for summary judgment based on qualified immunity. *See Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether Sheriff Caudill should have known that he was violating Johnson's constitutional rights, "we consider first whether those rights clearly existed and, if so, then whether a reasonable officer in [his] position would have appreciated he was violating those rights." *See Jackson*, 102 F.3d at 728.

An official's actions violate a "clearly established" constitutional right only if "in the light of pre-existing law[,] the unlawfulness" of the actions is apparent. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We do not require of such officials the legal knowledge culled "by the collective hindsight of skilled lawyers and learned judges," but instead only "the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Jackson*, 102 F.3d at 731. "Absent clearly established law that proscribe[s] [an official's] specific conduct, [he] should not be subjected to suit." *Id.*

This court has recognized that "the equal protection clause confers on a public employee a federal constitutional right to be free from gender discrimination." *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994); *see Davis v. Passman*, 442 U.S. 228, 234-35 (1979). Therefore, the question of Sheriff Caudill's entitlement to qualified immunity condenses to whether a "reasonable officer in [his] position would have appreciated that he was violating [Johnson's constitutional] right[ ]" to be free from gender discrimination. *See Jackson*, 102 F.3d at 728.

Johnson's primary contention is that Sheriff Caudill terminated her because of her gender. She does not dispute, however, that Sergeant Ruffin, not Sheriff Caudill, severed Johnson's ties with the drug task force, leaving her unable to perform the core duties of her position under Sheriff Caudill. Johnson's assertion that the drug task force should not have released her is irrelevant; instead, the inquiry focuses on whether Sheriff Caudill, when faced with the knowledge that Johnson could no longer participate in the work for which she was hired, acted reasonably in terminating her. We find Sheriff Caudill's actions reasonable based on Johnson's dismissal from the drug task force.

In addition, Johnson presents several examples of purported gender discrimination in which Sheriff Caudill in fact treated his male and female employees similarly. For example, Sheriff Caudill denied Johnson's two written requests[5] for computer equipment. Again,

---

[5]Johnson also decries Sheriff Caudill's response to her verbal request for equipment that she would "just ha[ve] to make d[o]" with the equip-

though, Johnson does not contest that her male coworkers likewise were not provided their own computers, internet access, or the Sheriff's Pack software by Sheriff Caudill. In the same way, Johnson objects to Sheriff Caudill's admonition regarding cohabitation with her boyfriend, but does not deny that Sheriff Caudill made similar statements to Johnson's male coworkers.[6] Because Sheriff Caudill treated Johnson and her male coworkers similarly, he cannot be said in these instances to have violated Johnson's constitutional right to be free from gender discrimination.

Finally, Johnson insists that Sheriff Caudill discriminated against her by telling her that he was "not afraid of lawsuits" and would "no longer need" her if she filed suit based on her suspension for speeding. *See* J.A. 83. Even if such a statement were an actionable threat outside of the qualified-immunity context, the proper inquiry here is whether a reasonable official in Sheriff Caudill's position would have known that such a statement violated Johnson's constitutional rights. Johnson cites no authority indicating that such a statement violates clearly established law. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992). Regardless of the wisdom of Sheriff Caudill's making such a statement, then, we cannot find that in doing so he violated Johnson's clearly established constitutional rights.

---

ment she had been given. *See* J.A. 151. Even were this action discriminatory, frugality with the distribution of equipment is simply not "specific conduct . . . proscribed by . . . clearly established law." *See Jackson*, 102 F.3d at 731. Sheriff Caudill could not have reasonably known, then, that such a response would rise to the level of violating Johnson's constitutional rights.

[6]Other examples include Johnson's challenge to her three-day speeding suspension (the standard punishment meted out to male and female officers alike), and her challenge to the four-week training program required of her but not of her more senior male coworkers (which program was not required at the time the more senior male coworkers were hired).

## IV.

In summary, we conclude that Sheriff Caudill is entitled to qualified immunity from Johnson's § 1983 claims against him. Accordingly, we reverse the district court's ruling on Sheriff Caudill's motion for summary judgment and remand with instructions to enter an order granting the motion for summary judgment.

*REVERSED AND REMANDED*