PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOEL FRANCIS; ANTHONY ROMANO; KEVIN CLARK,

*Plaintiffs-Appellants,*

v.

RODNEY GIACOMELLI; DAVID ENGEL; STEPHEN MCMAHON; CARL GUTBERLET; RALPH TYLER; MARTIN O'MALLEY,

*Defendants-Appellees.*

No. 08-1908

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:07-cv-03034-WDQ)

Argued: September 23, 2009

Decided: December 2, 2009

Before NIEMEYER and SHEDD, Circuit Judges, and
Mark S. DAVIS, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Shedd and Judge Davis joined.

**COUNSEL**

Neal Marcellas Janey, Sr., Baltimore, Maryland, for Appellants. Kathryn Widmayer Sullivan, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland; Matthew Wade Nayden, BALTIMORE CITY SOLICITOR'S OFFICE, Baltimore, Maryland, for Appellees.

---

**OPINION**

NIEMEYER, Circuit Judge:

In this appeal, we evaluate the legal sufficiency of a complaint, applying the standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) — i.e., whether the complaint on its face states plausible claims upon which relief can be granted.

Following highly public exchanges between Baltimore City Mayor Martin O'Malley and Baltimore City Police Commissioner Kevin Clark about Clark's performance as Commissioner, Mayor O'Malley terminated Commissioner Clark's employment, as well as the employment of two of his top deputies, Joel Francis and Anthony Romano. Mayor O'Malley explained in a press conference that the eroding perception of Commissioner Clark's leadership had made it "impossible" for Clark to remain Commissioner. Implementing the termination, the Mayor and Baltimore City Solicitor Ralph Tyler dispatched members of the Baltimore Police Department to the Commissioner's offices to retrieve from the Commissioner and his deputies their badges, police identifications, firearms, computers, and other official property, and to escort them from the building.

Commissioner Clark promptly filed suit against Mayor O'Malley and the City Council of Baltimore in state court,

seeking reinstatement and damages, based on an alleged violation of § 16-5(e) of the Code of Public Local Laws of Baltimore City (governing the removal of Police Commissioners) and breach of contract. The Maryland Court of Appeals ultimately concluded that, despite Commissioner Clark's contract with the Mayor and City Council of Baltimore, which authorized the Mayor to discharge the Commissioner without cause, Clark had not been discharged in accordance with Baltimore City Public Local Law, which required cause. *See Mayor & City Council of Baltimore v. Clark*, 944 A.2d 1122 (Md. 2008).

In addition to his state suit, Commissioner Clark and his deputies commenced this action, alleging that the Mayor, the City Solicitor, and several members of the Baltimore City Police Department violated their constitutional rights by seizing property from the Commissioner and his deputies and by seizing them and removing them from Police Department offices. Commissioner Clark and his deputies alleged that the defendants' conduct amounted to unreasonable searches and seizures and to a deprivation of due process because they were not given notice and an opportunity to be heard before being removed from their positions. Finally, Commissioner Clark and Francis, who are African-American, alleged that their firings were racially motivated, in violation of 42 U.S.C. § 1981.

By order dated July 16, 2008, the district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), ruling that the complaint did not state plausible claims for relief and that, with respect to Commissioner Clark's allegations that Mayor O'Malley denied Clark due process, the Mayor was entitled to qualified immunity.

Reviewing the district court's ruling *de novo*, we conclude that based on the facts alleged in the complaint—taken in context and as true—the complaint fails to articulate any claim for relief "that is plausible on its face." *Iqbal*, 129 S. Ct. at

1950 (quoting *Twombly*, 550 U.S. at 570). We also conclude that Mayor O'Malley, against whom the allegations of due-process violations were directed, is entitled to qualified immunity. Accordingly, we affirm.

I

The facts in this case are stated in two pages of the complaint, but additional background facts and context are provided by further allegations sprinkled throughout the complaint, as well as by allegations of the same events made in the state court complaint. While we evaluate only the allegations of the complaint in this federal case when considering the district court's ruling dismissing it, we nonetheless understand them in the context of the facts alleged in the state court complaint and restated by the Maryland Court of Appeals in *Clark*, 944 A.2d 1122, which the plaintiffs concede is the proper context in which to consider plaintiffs' allegations in this case. When questioned by the court during oral argument, plaintiffs' counsel agreed that the events described in the complaint were the same events underlying the state court litigation.

As background, Commissioner Clark alleged in state court that he was "induced" to leave his high-ranking and prestigious position as a Commander in the New York City Police Department to become the Baltimore City Police Commissioner. Clark entered into a contract with Baltimore City, entitled "Police Commissioner Memorandum of Understanding," which provided that he would hold his appointment for a term expiring June 30, 2008. He was thereafter confirmed as Police Commissioner by the Baltimore City Council. The Memorandum of Understanding between Commissioner Clark and Baltimore City provided:

> Either party may terminate this contract at any time, by giving forty-five (45) days prior written notice to the other. Notwithstanding the above sentence the

provisions of Section 2B [relating to additional compensation/severance pay] remain in force.

After Commissioner Clark took office, he and Mayor O'Malley exchanged letters and accusations relating to a domestic relations problem involving Commissioner Clark and Clark's internal investigation into Baltimore City Police Department activities, and the exchanges became public. Mayor O'Malley thereupon terminated Commissioner Clark's employment, and City Solicitor Tyler provided Clark with a letter of termination, dated November 10, 2004, which stated:

> This notice is sent on behalf of the Mayor and City Council of Baltimore (the "City") pursuant to Sections 12 and 13 of the Memorandum of Understanding ("MOU") between you and the City dated February 19, 2003. This notice shall serve as the City's 45-day notice of termination of your employment. Thus, your employment shall terminate 45 days from today. However, as the Mayor announced this morning, you have been relieved of all official duties as of 8:30 a.m., November 10, 2004, and therefore, your further access, if any, to Police Department facilities, equipment, or documents will be subject to the specific, prior authorization of Acting or Interim Police Commissioner Hamm.

The complaint in this case focuses on the facts relating to how Mayor O'Malley effected Commissioner Clark's discharge. It alleges that members of the Baltimore City Police Department, "with the assistance of over 50 additional and heavily armed members of the [Baltimore City Police Department] including all S.W.A.T. Team members, broke into and entered, and directed other members of the [Baltimore City Police Department] to break into and enter, the executive offices of Clark, Francis and Romano on the premises of the [Baltimore City Police Department]. They ransacked desks, credenzas and file cabinets. They seized and removed files,

papers, documents, computers and other personal property in the lawful possession and custody of Plaintiffs." The complaint also alleges that members of the Baltimore City Police Department seized the plaintiffs themselves, ordering them "to remove or surrender their weapons, badges, identification cards and other items of personal property lawfully in the possession of Plaintiffs during the periods of detention." Finally, the complaint alleges that these acts "were committed either on the instructions of defendants O'Malley and Tyler, or with the knowledge and consent of defendants O'Malley and Tyler, or were thereafter approved and ratified by defendants O'Malley and Tyler."

Resting on these factual allegations, the complaint purports to state four claims in four counts. Count I alleges that the plaintiffs' Fourth and Fourteenth Amendment rights were violated insofar as the searches of the plaintiffs' offices and the seizures of the plaintiffs and their personal property were not justified by any criminal charges or any warrant and were, therefore, unreasonable. In Count II, Clark and Francis, who are African-American, claim conclusorily that they were removed from their offices and terminated from their positions because of their race, in violation of 42 U.S.C. § 1981. Romano, who is white, is not a party to this count. In Count III, the plaintiffs complain that they were denied due process insofar as their employment was terminated without prior notice and a prior hearing. (Only Commissioner Clark appeals the dismissal of this claim.) Finally, in Count IV, the plaintiffs allege conclusorily that the defendants conspired to violate their civil rights based on the acts otherwise alleged, in violation of 42 U.S.C. § 1985.

The district court granted the defendants' motion to dismiss, and this appeal followed.

## II

Commissioner Clark and his deputies contend on appeal that the district court erred in granting the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that such a motion must be denied unless "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the [well-pleaded] allegations' in the Complaint," quoting from *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002).[1] They assert further that it was error to dismiss a complaint alleging civil rights violations unless it appears "to a certainty that the plaintiff[s] would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged," quoting from *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted).

The defendants contend that "[b]ecause the Complaint in this case is short on facts and long on legal conclusions, the district court correctly granted Appellees' motion to dismiss under Rule 12(b)(6)," citing *Twombly*, 550 U.S. 544.

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), considered with the assumption that the facts alleged are true, *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). And the legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a

---

[1] The standard that the plaintiffs quoted from *Swierkiewicz*, however, was explicitly overruled in *Twombly*. 550 U.S. at 562-63 (noting that this standard, first articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), "has earned its retirement").

complaint state a claim upon which relief can be granted). This appeal reduces to the single question of whether the complaint in this case meets these standards.

Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1202, at 88 (3d ed. 2004). Overlooking the broad range of criteria stated in the Federal Rules for a proper complaint, some have suggested that the Federal Rules, when adopted in 1938, simply created a "notice pleading" scheme, pointing for support to Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1), which provides that "[n]o technical form [for stating allegations] is required." But the "notice pleading" characterization may itself be too simplistic, failing to recognize the many other provisions imposing requirements that permit courts to evaluate a complaint for sufficiency early in the process. Rule 8 itself requires a *showing of entitlement* to relief. Rule 9 requires that allegations of fraud, mistake, time, place, and special damages be specific. Rule 11 requires that the pleading be signed and provides that the signature "certifies" (1) that the claims in the complaint are not asserted for collateral purposes; (2) that the claims asserted are "warranted"; and (3) that the factual contentions "have evidentiary support." And Rule 12(b)(6) authorizes a court to dismiss any complaint that does not state a claim "upon which relief can be granted." The aggregation of these specific requirements reveals the countervailing policy that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact.

In recent years, with the recognized problems created by "strike suits," *see* 5A Wright & Miller, *Federal Practice and*

*Procedure*, § 1296, at 46 & n.9,[2] and the high costs of frivolous litigation, the Supreme Court has brought to the forefront the Federal Rules' requirements that permit courts to evaluate complaints early in the process. Thus, in *Iqbal*, the Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face*.'" 129 S. Ct. at 1949 (emphasis added) (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To emphasize the Federal Rules' requirements for stating claims that are warranted and therefore form a plausible basis for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

---

[2]A "strike suit" is an action making largely groundless claims to justify conducting extensive and costly discovery with the hope of forcing the defendant to settle at a premium to avoid the costs of the discovery. *See id.*; *see also Black's Law Dictionary* 1572 (9th ed. 2009) (defining a strike suit as one "based on no valid claim, brought either for nuisance value or as leverage to obtain a favorable or inflated settlement").

At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief,'" as required by Rule 8. *Iqbal*, 129 S. Ct. at 1950 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). The Court noted that even though Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than con-clusions." *Id.*

With these principles in hand, we now turn to the complaint in this case to determine whether, on its face, it states a plausi-ble claim for relief.

III

Count I of the complaint, where the plaintiffs most fully articulate a claim, alleges that members of the Baltimore City Police Department, under the direction of Mayor O'Malley and City Solicitor Tyler, "broke into and entered" the Police Commissioner's offices, seized personal property, and "de-tained, held in custody and seized" the Police Commissioner and his deputies while ordering them to "surrender their weapons, badges, identification cards" and similar property — all without the benefit of criminal charges or a warrant. The complaint concludes that this conduct violated the plaintiffs' Fourth and Fourteenth Amendment rights against unreason-able searches and seizures.

Considered in their context, these allegations describe the conduct of Mayor O'Malley taken in furtherance of his deci-sion to terminate the plaintiffs' employment, directing mem-

bers of the Baltimore City Police Department to seize police department property and escort the plaintiffs from the police building. The plaintiffs' complaint filed in state court somewhat fleshes this out, asserting that members of the Baltimore City Police Department ordered the plaintiffs to surrender their firearms and to clean out their desks of personal belongings and escorted them out of the building in relieving them of their commands. And after they were physically removed, the Mayor announced to the public:

> For the good of this department and for crime reduction, I have relieved Commissioner Clark of his command effective as of 8:30 this morning. . . . Leadership involves the important element of perception and when that perception of leadership is eroded it makes it impossible for that leader to continue on.

The Mayor also announced that he had appointed Leonard Hamm as "Acting Police Commissioner."

Taking the facts in the complaint as true, we agree with the district court that Count I nonetheless fails to set forth a plausible claim for relief. While the Commissioner and his deputies conclusorily alleged that the searches and seizures violated their constitutional rights because no charges had been filed against them, nor had any warrant issued, their complaint did not allege that the defendants were engaged in a law-enforcement effort. Indeed, the facts show to the contrary, that the defendants' actions against the plaintiffs were employment actions based on the Mayor's perceived right to fire the Police Commissioner without cause, as stated in the Memorandum of Understanding between Commissioner Clark and Baltimore City.

In *O'Connor v. Ortega*, 480 U.S. 709, 723-26 (1987), the Supreme Court held that special needs authorize warrantless searches involving public employees for work-related rea-

sons. Noting that public employees' expectations of privacy are diminished for legitimate work-related reasons, the Court approved a balancing test under which government interests are weighed against the employee's reasonable expectation of privacy. *Id.* at 717, 719-20. This reasonableness test implicates neither probable cause nor the warrant requirement, which are related to law enforcement.

The plaintiffs' complaint relies on the allegations that no criminal charges had been filed and no warrant had issued in order to state a violation of the Fourth Amendment. But this assertion is both conclusory and erroneous, especially when the complaint itself does not allege that the searches and seizures were law-enforcement related. On the contrary, the complaint suggests throughout that the searches and seizures were taken in furtherance of Mayor O'Malley's employment action of firing Commissioner Clark.

Whether he was authorized to do so, the Mayor purported to terminate the employment of the Police Commissioner and his deputies, and in furtherance of that decision retrieved government property and escorted the plaintiffs from their offices. The plaintiffs allege nowhere that these actions were inconsistent with the Mayor's efforts to terminate the plaintiffs' employment. Indeed, it is common practice for an employer to take the employer's property away from discharged employees and to deny them access to the place of employment. While it is readily recognizable that Baltimore City has an interest in protecting Baltimore City Police Department property and in removing discharged employees from the Department's offices, the complaint fails to allege any countervailing privacy interests that would outweigh the City's interests. Rather, the complaint relies simply on the absence of any charges or any warrant, which is irrelevant in the factual context of the complaint.

Commissioner Clark maintains that the Mayor did not have authority to terminate the Police Commissioner's employ-

ment, an allegation with which the Maryland Court of Appeals agreed in part, *see Clark*, 944 A.2d at 1131-35, but that fact does not change the Fourth Amendment analysis. The fact that the Court of Appeals determined that Clark's firing was inconsistent with the Public Local Law of Baltimore City does not alone support the claim that the searches and seizures conducted in connection with the Mayor's effort to terminate Clark's employment violated the Fourth Amendment. *See Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001) (affirming the dismissal of a complaint alleging an illegal Fourth Amendment seizure during questioning concerning federal employment misconduct).

In short, we conclude that Count I does not on its face state a plausible claim for relief.

IV

Count II of the complaint alleges that the defendants discriminated against Commissioner Clark and Deputy Francis because of their race, in violation of 42 U.S.C. § 1981(a). But the only factual allegations asserted in support of this count are (1) that Commissioner Clark and Deputy Francis are African-American males; (2) that the defendants are all white males; and (3) that the defendants have never initiated or undertaken the actions of terminating employment and physically removing the employee against white members of the Police Department.

These allegations are not only conclusory and insufficient to state a § 1981 claim, *see Jordan*, 458 F.3d at 345, they are patently untrue, given that Deputy Romano, who is not alleged to be within a protected class, complained of the exact same treatment in every other count of the complaint, belying any claim of discriminatory treatment.[3] *See Johnson v.*

---

[3]While the complaint alleges that the defendants "discriminated *against Plaintiffs* on the basis of race in violation of the Equal Protection Clause,"

*Caudill*, 475 F.3d 645, 651 (4th Cir. 2007); *Booth v. Maryland*, 327 F.3d 377, 383 (4th Cir. 2003). The allegations in this count are nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed. We thus conclude that Count II does not on its face state a plausible claim for relief.

V

In Count III, the plaintiffs allege that Mayor O'Malley and City Solicitor Tyler "deprived Plaintiffs of their protected property interest without due process as guaranteed by the Fourteenth Amendment" because they were not given prior notice and a prior hearing to challenge their dismissals.

The district court dismissed the claim on the ground that Mayor O'Malley enjoyed qualified immunity insofar as it was not well-established on November 10, 2004, that the plaintiffs had any property interest in their employment. The court also concluded that, with respect to City Solicitor Tyler, the only allegation that could be made was that Tyler had "provided legal advice to Mayor O'Malley on Clark's termination" and therefore he could not be responsible for the authority exercised by Mayor O'Malley. Only Clark appeals this portion of the district court's ruling.

We agree with the district court. Mayor O'Malley fired Commissioner Clark in accordance with the Memorandum of Understanding, which provided that the Mayor could discharge Clark without cause, thus indicating to the Mayor that

it only asserts that Clark and Francis "are African-American males," making no similar assertion about Romano. In Count II, where Clark and Francis allege a more particularized § 1981 claim based on racial discrimination, only Clark and Francis are plaintiffs. The complaint thus fails to allege that Romano is a member of a protected class. The defendants assert further in their brief, as they asserted in their motion to dismiss filed in the district court, that Romano is white, an assertion accepted by the district court and not disputed by the plaintiffs.

Clark had no assurances of continued employment so as to give him a property interest in his employment. Although it is true that the Court of Appeals of Maryland decided, over three years later, that the Memorandum of Understanding was subservient to the requirements of the Public Local Law of Baltimore City, at the time that Mayor O'Malley fired Commissioner Clark, no law or decision had determined that the contract between Clark and the City of Baltimore was not enforceable.

Qualified immunity applies when the constitutional right alleged to have been violated is not "clearly established." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Preexisting law must demonstrate the unlawfulness of the act to the government official. *Id.* The denial of qualified immunity does not depend on the "very action in question" having been found unlawful, but it does require that "in the light of preexisting law the unlawfulness must be apparent." *Id.* Moreover, we have held that for purposes of qualified immunity, executive actors cannot be required to predict how the courts will resolve legal issues. *See Williams v. Hansen*, 326 F.3d 569, 578-79 (4th Cir. 2003).

In this case, it could not have been apparent to Mayor O'Malley that his firing of Commissioner Clark was not authorized by law until the Maryland Court of Appeals handed down its decision in *Clark* in March 2008, over three years after he fired Commissioner Clark. Because his actions were not clearly unlawful when performed, Mayor O'Malley is entitled to qualified immunity.

## VI

In Count IV, the plaintiffs allege that the defendants conspired to violate the plaintiffs' civil rights, in violation of 42

U.S.C. § 1985. The count makes no other allegations and contains no facts to support the conspiracy alleged.

To plead a violation of § 1985, the plaintiffs must demonstrate with specific facts that the defendants were "motivated by a specific class-based, invidiously discriminatory animus to [ ] deprive the plaintiff[s] of the equal enjoyment of rights secured by the law to all." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Since the allegation in Count IV amounts to no more than a legal conclusion, on its face it fails to assert a plausible claim. *See Iqbal*, 129 S. Ct. at 1950; *Gooden v. Howard County, Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc) (requiring plaintiffs alleging unlawful intent in conspiracy claims under § 1985 to "plead specific facts in a non-conclusory fashion to survive a motion to dismiss").

## VII

Finally, the plaintiffs contend that the district court abused its discretion in denying them an opportunity to amend their complaint.

In their papers opposing the defendants' motion to dismiss, the plaintiffs included the following concluding statement: "In the event that this Honorable Court decides to grant all or part of the Motion, Plaintiffs respectfully request leave to amend or to file an amended complaint." The plaintiffs filed no separate motion, and they attached no proposed amendment or statement indicating how they might wish to amend their complaint. Thus, their statement did not inform the court as to what amendment was being sought.

Local Rule 103.6 of the District of Maryland requires that a party requesting leave to amend provide a copy of the proposed amendment to the court. By violating this Rule, the plaintiffs failed to provide the district court with a means by which to determine whether the amendment would cure the defects in the initial complaint. In the circumstances, we conclude that the district court did not abuse its discretion in fail-

ing to give the plaintiffs a blank authorization to "do over" their complaint.

Taking the facts alleged in the complaint in context and as true, we conclude that the complaint does not state any claim for relief that is plausible on its face. Accordingly, we affirm the judgment of the district court.

*AFFIRMED*