**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1123**

Daphne M. Craddock,

                Plaintiff - Appellant,

        v.

Lincoln National Life Insurance Company,

                Defendant – Appellee,

and

LINCOLN NATIONAL CORPORATION; LINCOLN LIFE AND ANNUITY
DISTRIBUTORS, INC.; LINCOLN FINANCIAL INVESTMENT SERVICES
CORPORATION,

                Defendants.

Appeal from the United States District Court for the Middle
District of North Carolina, at Greensboro.  Catherine C. Eagles,
District Judge.  (1:12-cv-00684-CCE-LPA)

Submitted:  June 21, 2013              Decided:  July 22, 2013

Before DAVIS and THACKER, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Vacated and remanded by unpublished per curiam opinion.

Norman B. Smith, SMITH, JAMES, ROWLETT & COHEN, LLP, Greensboro,
North Carolina, for Appellant.   M. Robin Davis, Joshua M.

Krasner, JACKSON LEWIS LLP, Cary, North Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff-Appellant Daphne Craddock appeals the district court's dismissal of her employment discrimination suit against Defendant-Appellee Lincoln National Life Insurance Company ("Lincoln"), which terminated her employment under disputed circumstances. The district court found that Craddock's allegations that Lincoln violated the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101-12213, failed to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). We vacate the judgment and remand for further proceedings.

I.

Craddock began working for Lincoln's predecessor entity, Pilot Life Insurance Company ("Pilot"), in 1969.[1] A 1980 automobile accident left her with a "massive brain injury," and rendered her unable to return to work for over a year. J.A. 40. When she did return to work after the accident, Pilot

_____

[1] The facts set out here are alleged in Craddock's proposed second amended complaint. As explained below, the district court denied as futile Craddock's motion to file the second amended complaint, but considered the allegations therein when assessing Lincoln's motion to dismiss. We therefore view the second amended complaint as the operative complaint in reviewing the district court's dismissal order. Given our remand for further proceedings, the second amended complaint should be properly docketed in the district court.

3

accommodated her disabilities, apparently by assigning her to perform filing and file maintenance, and to process mail.[2] Though Craddock does not make clear if or how her resulting impairments changed since the accident, at the time of her 2011 termination they included "short-term memory impairment, somewhat limited ability in reading and writing, limited keyboard speed, and weakness of eye muscles." J.A. 41.

Craddock alleges that around 2010, when Lincoln appointed a new manager of the mail room, Lincoln "embarked . . . on a strategy and scheme to bring about [her] discharge . . . on the basis of either her disability or her age, or both." J.A. 41-42. Around this time, Craddock alleges, Lincoln "imposed on [her] and her co-employees" "quality standards" of 98 percent and "quantity standards" of 91 percent. J.A. 43. Craddock's "quality" performance was 97.4 percent, missing the minimum goal by .6 percent, and her "quantity" performance was 77.84 percent, missing the minimum goal by 13.16 percent. Id.

In May 2011 Craddock received an "oral warning" that she had been making mistakes, and in June 2011 she received a "written warning" that she needed to improve and become more efficient. J.A. 42. Craddock alleges that these warnings

---

[2] Craddock's complaint is unclear as to whether these were also her pre-accident job duties.

4

"falsely claim[ed] that she had been making mistakes when in fact she had not," and "falsely stat[ed] that she needed to improve and become more efficient, when in fact she was performing her job duties in an acceptably efficient manner . . . ." J.A. 42. On July 26, 2011, Craddock received a "final written warning" and was terminated that same day. Id. She was 59 years old at that time.

Craddock makes several additional allegations to support her claims. First, she alleges that Lincoln trained all non-disabled and younger employees in her department to use a scanner, and though she repeatedly requested that training (as she believes she could have performed scanning work despite her disabilities), Lincoln refused to provide it. Several positions at Lincoln involving scanner operation were available, and Craddock says she could have been reassigned to those positions. Second, she alleges that when she started receiving warnings, she requested reassignment to other jobs at Lincoln that she believed she could adequately perform, but was told she could not do so for six months (a period that had not expired by the time she was discharged). Finally, she alleges that after her discharge, she sought to be rehired by Lincoln, but that Lincoln's human resources personnel told her she could not work again for Lincoln, whether as a temporary or permanent employee.

On June 5, 2012, Craddock sued Lincoln in North Carolina state court, alleging violations of the ADEA and the ADA. Lincoln removed the action to the United States District Court for the Middle District of North Carolina. Lincoln then filed a motion to dismiss Craddock's complaint for failure to state a claim. Craddock filed an amended complaint, and Lincoln filed another motion to dismiss. Craddock then filed a second amended complaint. In response, Lincoln filed a motion to strike the second amended complaint. On January 11, 2013, the district court entered an order granting Lincoln's motion to dismiss and denying as futile Craddock's motion to amend.

## II.

We review de novo the district court's grant of Lincoln's motion to dismiss. CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 51 (4th Cir. 2011). Like the district court, we must assume all well-pled facts to be true, and draw all reasonable inferences in Craddock's favor. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. at 255 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to

6

state a claim to relief that is plausible on its face.'" Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).

### III.

We turn first to Craddock's ADEA claim. The ADEA forbids an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The district court concluded that though "[t]he allegations in the Second Amended Complaint are detailed, [they] affirmatively show that Ms. Craddock was not meeting her employer's legitimate expectations when she was terminated." J.A. 56. Accordingly, the court held that Craddock had failed to establish a prima facie case of age discrimination under the ADEA.

We are not persuaded that Craddock pled herself out of the very claim she sought to assert. The district court based its conclusion on a misreading of Fourth Circuit and Supreme Court precedent. The court quoted Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277 (4th Cir. 2004), for the proposition that to demonstrate a prima facie case of age

7

discrimination at the pleading stage, a plaintiff must show that "'(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.'" J.A. 56 (quoting Hill, 354 F.3d at 285). But that test is an evidentiary standard under the "pretext" framework set out by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and is "not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). Crucially, Hill applied the test at the summary judgment stage -- a fact the district court did not recognize.

In Swierkiewicz, the Supreme Court rejected the notion that "the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." 534 U.S. at 511. This is at least in part because "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements

of a prima facie case," which is an <u>indirect</u> method of proof. <u>Id.</u>[3]

That leaves the question of whether the allegations in the second amended complaint state a claim to relief under the ADEA that is plausible on its face. Though it is a close question, drawing all reasonable inferences in Craddock's favor (as we must), we conclude that they do.

Two of Craddock's allegations support this conclusion. First, Craddock alleges that Lincoln trained all younger employees in her department to use a scanner, but despite her requests did not train her. Second, Craddock alleges that Lincoln's human resources personnel told her she could not work again for Lincoln, whether as a temporary or permanent employee. J.A. 45-46. Lincoln may well have neglected to train Craddock, and refused to consider rehiring her, based on one or more permissible reasons. But the inference that Lincoln did so because of Craddock's age may also be reasonably drawn from the

---

[3] In <u>Twombly</u>, the Court later "explicitly overruled" the standard that a court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (citing <u>Twombly</u>, 550 U.S. at 562-63). But <u>Twombly</u> did not alter the <u>Swierkiewicz</u> rule that a plaintiff need not set out the elements of a prima facie case for an indirect method of proof in order to survive a motion to dismiss.

facts alleged. This suffices to allow her ADEA claim to survive a motion to dismiss for failure to state a claim upon which relief can be granted.

IV.

We turn next to Craddock's ADA claim. "The ADA prohibits discrimination against 'a qualified individual on the basis of disability.'" Young v. United Parcel Serv., Inc., 707 F.3d 437, 443 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(a)). To plead a claim of disability discrimination under the ADA, a plaintiff must allege that (1) she had a disability as defined in the ADA; (2) she was a "qualified individual," i.e., able to perform the essential functions of her job with or without reasonable accommodation; and (3) her employer took an adverse action against her on account of her disability. Id.

The district court first concluded that neither Craddock's amended complaint nor the second amended complaint provided "any factual allegations to support [the] conclusory statement" that she was fired on the basis of her disability. J.A. 57. In the court's view, such allegations could have included "allegations of negative comments made about people with disabilities," "allegations of harassment or bias related to [Craddock's] disability," or "circumstantial facts supporting an inference of bias against disabled people." Id. Second, the court concluded that the second amended complaint itself "establish[ed] that she

10

was not qualified for her position, . . . and the only suggested accommodation -- that the employer tolerate the level of mistakes -- is not reasonable." Id. The court thus held that Craddock failed to state a viable ADA claim.

We disagree. Drawing all reasonable inferences in Craddock's favor, we conclude that the second amended complaint states a plausible claim to relief under the ADA. As noted above, Craddock alleges that all non-disabled employees in her department received a form of training (i.e., regarding scanning) that she did not, that she could have performed scanning work, and that scanning positions were available. She also alleges that Lincoln refused to consider rehiring her. These allegations render plausible Craddock's claim that she was discharged on the basis of disability, and that Lincoln failed to reasonably accommodate her disability.

It is true that several of Craddock's proposed accommodations are not accommodations at all, but rather suggestions that Lincoln tolerate lower performance regarding quality and quantity. But Craddock also alleges that she could have performed other duties such as scanning, and that several scanning positions were available. The ADA expressly recognizes "reassignment to a vacant position" as a reasonable accommodation. 42 U.S.C. § 12111(9)(B). In short, like the age

11

claim, the disability claim is not susceptible of resolution on the pleadings.

## V.

For the reasons set forth, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion. Of course, we express no view as to the ultimate merits of Craddock's claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>VACATED AND REMANDED</u>